UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EUGENIO SPITALIERI, II,

        Petitioner,

v.                                      Case No. 5:16-cv-87-OC-34PRL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## <u>ORDER</u>

### I. Status

       Petitioner Eugenio Spitalieri, an inmate of the Florida penal system, initiated this action on February 12, 2016, by filing, with the assistance of counsel, a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1) in the United States District Court Northern District of Florida. On February 16, 2016, the Northern District transferred the case to this Court. <u>See</u> Doc. 5. In the Petition, Spitalieri challenges a 2010 state court (Lake County, Florida) judgment of conviction for two counts of manslaughter. Spitalieri raises two grounds for relief. <u>See</u> Petition at 10-31.[1] Respondents have submitted a memorandum in opposition to the Petition. <u>See</u> Response to Petition (Resp.; Doc. 12) with exhibits (Resp. Ex.). On August 1, 2016, Spitalieri filed a brief in reply. <u>See</u> Petitioner's Reply to Respondent's Response to Petitioner's Motion for Relief Pursuant to 28 U.S.C. § 2254 (Reply; Doc. 16.). This case is ripe for review.

---

[1] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On May 2, 2008, a grand jury charged Spitalieri with two counts of second-degree murder for the deaths of Anthony Shervington (count one) and Winston Gordon (count two). Resp. Ex. A. Spitalieri proceeded to a jury trial, at the conclusion of which the jury found him guilty of the lesser included offenses of manslaughter as to each count. Resp. Ex. C at 1148. On January 4, 2010, the circuit court sentenced Spitalieri to a term of incarceration of fifteen years in prison followed by a term of probation of fifteen years as to each count. Resp. Ex. B. The circuit court ordered the sentence imposed on count two to run consecutively to the sentence imposed on count one. Id.

On direct appeal, Spitalieri, with the assistance of counsel, filed an initial brief raising the following five arguments: (1) the manslaughter instruction was erroneous; (2) the circuit court erred in not granting his motion to dismiss; (3) the self-defense instruction was erroneous; (4) the circuit court erred in denying his motion for a downward departure sentence; and (5) the circuit court erred in assessing jail credit and imposing fines and costs. Resp. Ex. D. The State filed an answer brief. Resp. Ex. E. On July 8, 2011, Florida's Fifth District Court of Appeal (Fifth DCA) per curiam affirmed the convictions and sentences except that it remanded the case back to the circuit court to correct Spitalieri's jail credit and the imposition of certain fines and court costs. Resp. Ex. G. Spitalieri sought review of the Fifth DCA's opinion with the Florida Supreme Court. Resp. Ex. H. However, on December 28, 2011, the Florida Supreme Court declined to accept jurisdiction. Resp. Ex. I.

On March 12, 2013, Spitalieri, through counsel, filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp.

Ex. J. Spitalieri raised the following two grounds for relief in his Rule 3.850 Motion: newly discovered evidence (ground one) and ineffective assistance counsel for failing to object to an erroneous manslaughter jury instruction (ground two). Id. Following an evidentiary hearing on ground one, the circuit court denied the Rule 3.850 Motion. Resp. Ex. M. On February 2, 2016, the Fifth DCA per curiam affirmed the circuit court's denial of the Rule 3.850 Motion without a written opinion, and issued the Mandate on February 26, 2016. Resp. Ex. Q.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Spitalieri's] claim[s] without

further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

## A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[2] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).
[5] Murray v. Carrier, 477 U.S. 478 (1986).

> errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

"[A] claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." Henry v. Warden, Ga. Diag. Prison, 750 F.2d 1226, 1230 (11th Cir. 2014); see also Carrier, 477 U.S. at 488; Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. Carrier, 477 U.S. at 488; see also Henderson v. Campbell, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." Henderson, 353 F.3d at 897 (citing Edwards, 529 U.S. at 446 and Carrier, 477 U.S. at 478).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration

> on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made

> errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was

> incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Spitalieri raises two separate claims related to the sufficiency of the evidence presented at his trial.[6] The Court will address these two sub-claims separately below, but first, a review of the relevant evidence presented at trial is necessary to properly analyze the claims. Much of the following is undisputed, but the Court will address specific variances in the facts where relevant. On April 11, 2008, Spitalieri lived with his friend Michael Ryan in the home of Robert Masucci, Ryan's grandfather. Resp. Ex. C at 297, 534, 565-66. Spitalieri sold marijuana and had brokered

---

[6] For purposes of reference, the Court will refer to Spitalieri's claim that the circuit court erred in denying his motion to dismiss as Sub-Claim A and will refer to his claim of an erroneous jury instruction for the justifiable use of deadly force as Sub-Claim B.

a deal to sell a quarter pound of marijuana to the victims, Shervington and Gordon. Id. at 568-69, 618-20, 822. He invited Shervington and Gordon inside Masucci's house to consummate the deal. Id. at 572-74, 621-24, 822. Inside Spitalieri's bedroom, the victims, Spitalieri, and Ryan began discussing the deal when Gordon pulled out what appeared to be a semi-automatic handgun, pointed it at Spitalieri's head, and ordered Spitalieri to give him his marijuana and his money. Id. at 574-78, 822-23. A scuffle began and Spitalieri yelled at Ryan to go get Spitalieri's semi-automatic handgun that was hidden under a futon in another room of the house. Id. at 577-78, 624 644, 822-23. At this point, there is conflicting testimony concerning the ensuing fight.

According to Ryan, once Ryan retrieved the firearm, the victims hurriedly grabbed the bag of marijuana and money and ran out the front door of the house. Id. at 578. Ryan testified at trial that as the victims ran out of the house, Spitalieri directed Ryan to throw him the gun, which he did, and Spitalieri then ran out of his bedroom in pursuit of the victims. Id. at 579-81. Ryan did not follow, but heard somebody's voice yell "kill him, kill him," after which he heard multiple gunshots. Id. at 582. However, a former girlfriend of Spitalieri's, Christin Hall, who also testified at trial said that Spitalieri confided in her after the incident about what happened during the shooting. Id. at 822-32. According to Hall, Spitalieri told her that the scuffle that took place inside the bedroom actually continued through the house towards the front door. Id. at 823-24. Shervington then tried to break up the fight between Spitalieri and Gordon, with Shervington threatening to kill Spitalieri, at which point Spitalieri shot them both. Id. at 824. After the shooting, the evidence is consistent that Spitalieri retrieved the stolen marijuana and money and fled the scene. Id. at 307-08, 583, 629-36, 827.

Forensic evidence revealed that the majority of the bullet casings were located around the front patio area of the house. Id. at 335. One victim, Gordon, was face down on the ground near the front door, with his feet close to the door and his head pointed towards the street. Id. at 323, 329, 333, 378. The second victim was also laying facedown in the front yard. Id. at 322-23. Near the victim in the front yard was a realistic toy gun. Id. at 339-41, 371. No blood was found inside the house and the only damage to the home was broken glass near the front door caused by a gunshot fired from inside the house out towards the yard. Id. at 378, 469, 541-42, 586. Notably, despite testimony of a fight and that one of the victims had either punched or hit Spitalieri with the butt of a gun, no one observed visible injuries to Spitalieri's head or other parts of his body. Id. at 648, 722, 847. Additionally, every casing and cartridge found at the scene was consistent with being fired from the same .9mm Luger semi-automatic handgun. Id. at 791-95. Rosemary Jassoy, a firearms expert, testified that although she could not make a true determination of the distance between the victims and the gun at the time Spitalieri pulled the trigger, she did testify there was no evidence of a "close-tight contact shot." Id. at 795, 800, 813. The autopsy results revealed that Shervington, who was later found dead in the front yard, had been shot twice in the back and Gordon had been shot five times, with the majority of the shots entering in a back to front trajectory. Id. at 417, 419-20, 427, 429-34, 438. Of note, the medical examiner testified that one of Gordon's exit wounds was indicative of his body being against a flat, firm surface, such as a floor. Id. at 447.

### Sub-Claim A:  Motion to Dismiss

Spitalieri contends that the circuit court erred in denying the motion to dismiss that his trial counsel raised contemporaneously with a motion for judgment of acquittal.

Petition at 10-24. According to Spitalieri, the circuit court erred because (1) it did not apply the correct legal standard; instead, applying the standard for a judgment of acquittal to his motion to dismiss; and (2) the evidence demonstrated that Spitalieri's use of deadly force was justifiable and he was entitled to absolute immunity from prosecution. Id. at 15-19.

Respondents contend that Spitalieri failed to properly exhaust this claim, because although he raised the issue on direct appeal, he did not argue the federal nature of his current claim in state court. Response at 7-9. In his Reply, Spitalieri counters that this claim is exhausted because he alleged on direct appeal that the evidence of his conviction was insufficient, which he claims, "rests upon his right to Due Process." Reply at 3-4. Spitalieri further contends that the Court should exercise "equitable discretion" to prevent the incarceration of an innocent person. Id. at 4. The record reflects that in Spitalieri's initial brief on direct appeal, he argued that the circuit court erred in denying his motion to dismiss because it applied the wrong standard and the facts presented at trial demonstrated he was entitled to absolute immunity. Resp. Ex. D at 21-27. However, Spitalieri made these arguments in terms of state law only. Id. (citing Peterson v. State, 983 So. 2d 27 (Fla. 1st DCA 2008); §§ 776.012, 776.013, 776.031, 776.032, Fla. Stat.; Velasquez v. State, 9 So. 3d 22 (Fla. 4th DCA 2009); Gray v. State, 13 So. 3d 114 (Fla. 5th DCA 2009); Peterson v. State, 983 So. 2d 27 (Fla. 1st DCA 2008); Hair v. State, 17 So. 3d 804 (Fla. 1st DCA 2009); McDaniel v. State, 24 So. 3d 654 (Fla. 2d DCA 2009); Weiand v. State, 732 So. 2d 1044 (Fla. 1999)). Accordingly, the Court finds this claim is unexhausted as Spitalieri failed to raise the federal nature of this claim in state court. See Baldwin, 541 U.S. at 29. Spitalieri has not demonstrated cause and prejudice to overcome

this procedural default. Additionally, his claim of actual innocence is conclusory and unsupported by any new facts demonstrating his innocence; therefore, his procedural default is not excused. See Calderon, 523 U.S. at 559.

Even if properly exhausted though, Spitalieri would not be entitled to federal habeas relief on this claim because it involves the state court's application of state law, which is not cognizable in federal habeas proceedings. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Whether or not the circuit court utilized the right legal standard when evaluating Spitalieri's motion to dismiss is a matter of state law that does not call into question whether the circuit court violated the Constitution or federal law.

Additionally, to the extent the Court could broadly interpret this claim as an attack on the sufficiency of evidence at trial, Spitalieri is still not entitled to federal habeas relief. The Due Process Clause "prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979). The Supreme Court has "made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). In particular, the Supreme Court explained:

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a

state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.

Id. (citations and quotations omitted). "[T]he only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality," and the state court's determination that it was not "in turn is entitled to considerable deference under AEDPA." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 463 (11th Cir. 2015) (quoting Coleman, 650 U.S. at 656).

Under Florida law in effect at the time of the homicides in this case, an individual was justified in using deadly force and did not have a duty to retreat if "[h]e or she reasonably believe[d] that such force [was] necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." § 776.012, Fla. Stat. (2008) (emphasis added). As noted above, there was a factual dispute as to whether or not the victims posed an imminent threat to Spitalieri or his friends. Statements Spitalieri made to Hall suggest the victims posed an imminent threat to Spitalieri as the three were actively involved in a fight when Spitalieri shot them. Resp. Ex. C at 823-24. However, the State also presented two witnesses who were present at the scene, Ryan and Amy Grindrod, who testified that the victims were fleeing the house at the time Spitalieri fired his weapon. Id. at 578-82, 614, 625-28. Additional forensic evidence supported Ryan and Grindrod's recollection of the events. Both bodies were outside of the house, with one in the yard and another face down on the patio, positioned as if exiting the front door. Id. at 322-23, 329, 333, 378. The entry wounds further suggest the victims were shot from behind or while not facing Spitalieri, with one shot seemingly fired while the victim was on the ground. Id. at 417, 419-20, 427,

429-34, 438, 447. Based on this evidence, the jury's rejection of Spitalieri's self-defense argument is reasonable and supported by competent substantial evidence as Ryan and Grindrod's testimony, coupled with the forensic evidence, support the idea that the zone of danger had ended and Spitalieri did not face an imminent threat at the time he used deadly force. Accordingly, the Court finds a rational trier of fact could have agreed with the jury. See Johnson, 566 U.S. at 651. In light of the above analysis, the claim in Sub-Claim A of Ground One is due to be denied.

### Sub-Claim B: Justifiable Use of Force Jury Instruction

Spitalieri argues that the circuit court erred in reading an erroneous jury instruction concerning the justifiable use of force. Petition at 19-24. Specifically, he maintains that the circuit court should not have read the underlined portion of the following:

> The danger facing the defendant need not have been actual; however, to justify the use of deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed the danger was real.

Id. at 22. Spitalieri contends that this language "implied there was a duty to retreat when there was no duty to retreat, thus resulting in a burden shift which is improper." Id. Spitalieri also asserts that the circuit court erred in failing to read the following portion of the standard jury instruction:

> If the defendant was in a dwelling where he had a right to be, he is presumed to have had a reasonable fear of imminent death or great bodily harm to himself or another if the victims had unlawfully and forcibly entered that dwelling and the defendant had reason to believe that had occurred. The defendant had no duty to retreat under such circumstances.

> A person who unlawfully and by force enters or attempts to enter another's dwelling is presumed to be doing so with the intent to commit an unlawful act involving force or violence.

Id. at 23. Spitalieri alleges that the facts of the case supported the reading of this instruction and that the circuit court's failure to read it constituted fundamental error because it allowed the State to argue that he had a duty to retreat when he did not as a matter of law. Id. at 24.

Respondents assert that this sub-claim is not properly exhausted, because although Spitalieri raised the issue on direct appeal, he did not argue the federal nature of this claim in state court. Response at 7-9. In his Reply, Spitalieri contends that he argued on direct appeal that under "both the Florida and federal constitutions, the jury is required to be completely and accurately instructed." Reply at 4. Additionally, Spitalieri states that "[g]iven the direct invocation of a federal claim of error and the reliance upon both state and federal case law, it cannot be said the State was not fairly apprised of the nature of the federal claim." Id. at 4-5. In his initial brief, Spitalieri raised a similar claim regarding the justifiable use of deadly force instruction read at his trial. Resp. Ex. D at 28-34. Contrary to Spitalieri's contention otherwise, however, he did not directly invoke the federal constitution or otherwise assert a federal argument in the presentation of this claim on his direct appeal. Id. (citing Carter v. State, 469 So. 2d 194 (Fla. 2d DCA 1985); Vowels v. State, 32 So. 3d 720 (Fla. 5th DCA 2010); Castillo v. State, 896 So. 2d 973 (Fla. 5th DCA 2005); Goode v. State, 856 So. 2d 1101 (Fla. 1st DCA 2003); McWhorter v. State, 971 So. 2d 154 (Fla. 4th DCA 2007); Richards v. State, 39 So. 3d 431 (Fla. 2d DCA 2010); Weiand, 732 So. 2d 1044). Therefore, this claim is unexhausted because the federal nature of this claim was not fairly presented to the state court. See Baldwin, 541 U.S. at

29. Spitalieri has neither alleged nor demonstrated cause and prejudice to overcome this procedural default. Likewise, to the extent Spitalieri claims he is actually innocent, the Court finds his allegation is conclusory and not supported by new evidence. Therefore, it cannot excuse this procedural default. See Calderon, 523 U.S. at 559.

Nevertheless, even assuming this claim was exhausted, Spitalieri is not entitled to the relief he seeks. The Eleventh Circuit has explained:

> Federal habeas relief is unavailable "for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)). A jury instruction that "was allegedly incorrect under state law is not a basis for habeas relief," id. at 71-72, 112 S.Ct. at 482, because federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68, 112 S.Ct. at 480. Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, " 'so infected the entire trial that the resulting conviction violate[d] due process.' " Id. at 72, 112 S.Ct. at 482 (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973)).

Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle, 502 U.S. at 72). To the extent Spitalieri argues the justifiable use of deadly force jury instruction was error under Florida law, such a claim is not cognizable in a federal habeas petition. See id. Moreover, the phrase "could be avoided only through the use of that force" was part of the standard jury instruction at the time of trial and remains so currently. See Resp. Ex. C at 904-06; In re Standard Jury Instructions in Criminal Cases – Report No. 2007-03, 976 So. 2d 1081, 1085 (Fla. 2008); Fla. Std. Jury Instr. (Crim.) 3.6(f). Notably, this specific standard jury instruction is prefaced with an instruction to trial courts to "[r]ead in all cases." In re Standard Jury Instructions in Criminal Cases – Report No.

2007-03, 976 So. 2d at 1085; Fla. Std. Jury Instr. (Crim.) 3.6(f). Accordingly, Spitalieri's claim simply challenges the circuit court's adherence to state law. As Florida courts have used this language with approval for several years, the Court is bound by Florida's interpretation of state law. See Chamblee v. Florida, 905 F.3d 1192, 1196 (11th Cir. 2018) (noting that "in habeas proceedings, we are bound by a state court's interpretation of its own laws and procedures."). Therefore, Spitalieri has failed to demonstrate his entitlement to federal habeas relief on this claim.

Regarding Spitalieri's claim that the circuit court erred in omitting two paragraphs of the justifiable use of deadly force instruction, this claim fails as a matter of law. The statutory basis for these two paragraphs of the standard jury instruction is section 776.013(1), Florida Statutes (2008). However, the presumption this instruction and statute describe does not apply if "[t]he person who uses defensive force is engaged in an unlawful activity or is using the dwelling, residence, or occupied vehicle to further an unlawful activity." § 776.013(2)(c), Fla. Stat. (2008). Here, it is undisputed that Spitalieri was involved in unlawful activity, selling marijuana, and using the residence to further that unlawful activity. Resp. Ex. C at 568-75, 619-24, 822-24. Additionally, the presumption only applies if the person against whom defensive force was used was in the process of unlawfully and forcefully entering, or had already unlawfully and forcibly entered, the dwelling. § 776.013(1)(a), Fla. Stat. (2008). It is undisputed that the victims were invited into the home and did not unlawfully or forcefully enter the home.[7] Resp. Ex. C at 572-74,

---

[7] To the extent Spitalieri analogizes the facts of this case to "a burglary case where the consent to enter is deemed withdrawn when it becomes apparent that the entry was for a [un]lawful purpose," this analogy is inapplicable. Under Florida law, a burglary can occur either by unlawful entry into a dwelling or remaining in a dwelling after consent has been revoked. See § 810.02(1)(b), Fla. Stat.; see also Mosley v. State, 842 So. 2d 855,

621-24, 822. Accordingly, Spitalieri was not entitled to have the circuit court read this instruction and the circuit court did not err in refusing to read it. See §§ 776.013(1)(a) & (2)(c), Fla. Stat. (2008). For the foregoing reasons, this claim is due to be denied and Ground One as a whole is due to be denied.

## B. Ground Two

In Ground Two, Spitalieri contends that his trial counsel was ineffective because he failed to object to an erroneous manslaughter by act jury instruction that the Florida Supreme Court had invalidated prior to his trial. Petition at 24-31. According to Spitalieri, in 2008, the Florida Supreme Court changed the standard jury instruction for manslaughter by act. Id. at 26-27. At trial, the circuit court instructed the jurors that they could find Spitalieri guilty of manslaughter if the victim was dead and either Spitalieri intentionally caused the death of the victim or the death was caused by Spitalieri's culpable negligence. Id. However, Spitalieri contends that the Florida Supreme Court revised the instructions to reflect that while it was not necessary for the State to prove premeditation to kill; instead, it did have to prove that Spitalieri had an intent to commit an act which caused the death. Id. at 27. Spitalieri maintains that "the evidence supported a finding that Petitioner had no intent to kill the victims." Id. at 29. But for counsel's failure

---

857 (Fla. 1st DCA 2002) (defining "burglary as either (1) unlawful entry with intent to commit a crime therein, or (2) lawful initial entry and remaining in with intent to commit a crime when the remaining in is surreptitious, after permission has been withdrawn, or to commit a forcible crime."). Section 776.013(1) does not contain a provision discussing "remaining in" the dwelling after consent has been revoked. Instead, the plain language of section 776.013(1) is clear that the initial entry must have been both unlawful and forceful, which is not the case here. Accordingly, as the statutory basis for the burglary concept Spitalieri relies on in support of his analogy is not present in the justifiable use of deadly force statute, his argument is unpersuasive.

to object, Spitalieri argues that the outcome of the trial would have been different and that this issue would have been properly preserved for appeal. Id. at 31.

Spitalieri raised a similar claim in his Rule 3.850 Motion. Resp. Ex. J at 11-14. In denying this claim, the circuit court stated:

> The State argues Defendant cannot demonstrate the failure to object affected the verdict in any way. Citing Contreras-Mayahua v. State, 40 So. 3d 861 (Fla. 4th DCA 2010), the State maintains there is no way the instruction could have influenced the jury to Defendant's determinant and, therefore, he cannot demonstrate prejudice. This Court references and incorporates the State's Response. Thus issue two is DENIED.

Resp. Ex. M at 7. The Fifth DCA per curiam affirmed the circuit court's denial of this claim without a written opinion. Resp. Ex. Q.

To the extent that the Fifth DCA decided this claim on the merits,[8] the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Spitalieri is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Two is without merit because Spitalieri cannot

---

[8] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

demonstrate prejudice. See Contreras–Mayahua v. State, 40 So. 3d 861, 863 (Fla. 4th DCA 2010) (finding that erroneous manslaughter by act instruction as lesser included offense of second-degree murder was not fundamental error where defendant was convicted of lesser included offense of manslaughter). Under Florida law, if a defendant cannot demonstrate fundamental error on direct appeal, he or she likewise cannot demonstrate prejudice under the Strickland standard. Chandler v. State, 848 So. 2d 1031, 1046 (Fla. 2003); Sheppard v. State, 62 So. 3d 14, 15 (Fla. 3d DCA 2011). Here, Spitalieri raised this issue on direct appeal asserting fundamental error. Resp. Ex. D at 13-20. Notably, the Fifth DCA affirmed his convictions and sentences in a written opinion that cited Contreras-Mayahua in support of its decision. Resp. Ex. G at 1. Accordingly, as Spitareli could not demonstrate fundamental error on direct appeal, his claim of prejudice must fail. See Chandler, 848 So. 2d at 1046; Sheppard, 62 So. 3d at 15. Additionally, even if counsel had objected and the circuit court had read the correct instruction, the evidence presented at trial still would have supported a manslaughter conviction because it is undisputed that Spitalieri intended to shoot the victims, Resp. Ex. C at 578-83, 636, 824, which demonstrates his intent to commit the act, pulling the trigger, that caused the deaths of both victims. Accordingly, Spitalieri cannot demonstrate prejudice and his claim in Ground Two is due to be denied.

### VII. Certificate of Appealability

### Pursuant to 28 U.S.C. § 2253(c)(1)

If Spitalieri seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Spitalieri "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Spitalieri appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is

not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** in Chambers, this 12th day of March, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      Eugenio Spitalieri, #U28175
        Patrick Michael Megaro, Esq.
        Kristen Lynn Davenport, Esq.